**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| RIEDELL SHOES, INC., a Minnesota corporation,<br><br>              Plaintiff,<br><br>    vs.<br><br>MOTA SKATES, LLC, an Arizona limited liability company, John Doe, Mary Roe, ABC Corporation, and XYZ, LLC,<br><br>            Defendants. | **COMPLAINT**<br>**JURY TRIAL DEMANDED** |

---

Plaintiff Riedell Shoes, Inc. ("Riedell") alleges and states as follows for its Complaint against Mota Skates, LLC ("Mota"):

### THE PARTIES

1. Riedell is a Minnesota corporation with its principal place of business at 122 Cannon River Avenue, Red Wing, Minnesota 55066.

2. Riedell markets and sells, among other related signature products, roller skate ball bearing products under the Moto® trademark ("Moto® Mark"), which has been used continuously and exclusively in connection with Riedell's sale of roller skate bearings since at least September 2011, examples of which are shown below and attached hereto as **Exhibit A**:





3. Riedell is the owner of a federal trademark registration, Reg. No. 4274488, issued by the United States Patent and Trademark Office ("PTO") on January 15, 2011, for the Moto® Mark, as depicted below, for "roller skate ball hearings" and attached hereto as **Exhibit B**:

# MOTO

4. On information and belief, Mota is an Arizona limited liability company, with a domestic address at 16548 East Laser Drive, Suite 1, Fountain Hills, Arizona 85268, and which markets, sells, and distributes products throughout the United States, Canada, and Europe, including through the World Wide Web.

5. On information and belief, John Doe, Mary Roe, ABC Corporation, and XYZ limited liability company are currently unknown individuals and entities associated with Mota, who may be responsible parties for the unlawful conduct described herein.

6. Mota has recently begun marketing, advertising, selling, and palming off roller skate bearings and other roller skate components and accessories that deliberately copy, infringe, and misappropriate the Moto® Mark (each collectively referred to herein as the "Mota Mark"), examples of which are shown below and attached hereto as **Exhibit C**:



7. Mota's actions are likely to cause confusion and deceive consumers and the public regarding the source or affiliation of the infringing Mota Mark with Riedell's products, including the Moto® Mark, and therefore Riedell has commenced this action for preliminary and permanent equitable relief and damages.

## JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction over this action because Riedell's claims arise under federal law, namely, 28 U.S.C. §§ 1331, 1338 and 15 U.S.C. § 1111 *et seq.* Also, Riedell and Mota are citizens of different states, the amount in controversy exceeds $75,000, and therefore diversity jurisdiction addditionally exists under 28 U.S.C. § 1332. Moreover, the Court has supplemental jurisdiction over Riedell's related state-law claims under 28 U.S.C. § 1367.

9. This Court has personal jurisdiction over Mota, which conducts substantial business throughout the United States, and which on information and belief conducts substantial business in and has substantial contacts to the State of Minnesota, including by engaging in acts within this State causing injury, including, on information and belief, the targeting of the Minnesota consumer market for roller skates and roller derby, by specifically marketing, advertising, offering to sell, selling, and distributing its infringing products in Minnesota retail stores, or which has otherwise made or established contacts with this State sufficient to permit the exercise of personal jurisdiction.

10. This Court is an appropriate venue for this action under 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

11. Riedell was founded 70 years ago to produce high-quality ice and roller skate packages and accessories, including roller skate bearings, throughout the United States, Canada, Europe, and other countries.

12. Riedell's roller skates have earned a strong reputation for quality, comfort, performance, and style within the sport of roller skating, both for professional and recreational atheletes of those sports.

13. Within the roller skate market, Riedell® brand roller skates and bearings are well-known, top-of-the-line, industry-leading products that are highly sought after as a preferred brand of professional roller skaters.

14. Riedell's brand and its roller skates and bearings have acquired a long-standing and zealous following within the sport of roller derby and were first embraced by the roller skating market in the 1970s; Riedell has continued to sell specialized roller derby skates since that time.

15. Since at least as early as September, 2011, Riedell has manufactured and sold roller skate bearings, as reflected on the attached **Exhibit A**, featuring the "Moto® Mark", establishing Riedell's trademark and prominence of "Moto® Mark" bearing brand in the world of roller skating.

16. Riedell has registered the Moto® Mark, with United States Customs and Boarder Protection, registration number 4274488.

17. Riedell's specialized roller derby skates have enjoyed a resurgence over the past few years, together with the revival in popularity and prevalence of roller derby.

18. This resurgence in popularity of the Riedell® brand in the roller derby world is exemplified by the prominent placement of Riedell's roller derby skate products in the 2009 roller derby motion picture, *Whip It*, which was widely publicized and

starred actresses Drew Barrymore and Ellen Page; Riedell outfitted the *Whip It* cast in Riedell® derby skates.

19. **Exhibit D** shows promotional photographs from *Whip It*, featuring Ellen Page and Drew Barrymore wearing Riedell's 265 Model roller skates.

20. The quad-skate and roller derby market is a small and discrete market with a limited number of specialized brands. Manufacturers in the market are well known to the market's devoted consumers, and brands have developed significant reputational value and goodwill.

21. On information and belief, Julie Glass, one of Mota's two members, has been a speed skater since 1989, and a roller derby player since at least 2009, playing for Team USA in the 2011 Roller Derby World Cup and winning seventeen inline skate world titles.

22. On information and belief, one of Mota's members, Doug Glass, has been a speed skater since 1978, winning two world titles on quad skates.

23. On information and belief, Julie and Doug Glass have been actively involved in developing, marketing, and selling skate products since 1997 and have been well aware of Riedell's brands and products for many years, including Riedell's Moto® Mark.

24. On information and belief, from 2005 to 2015, Julie and Doug Glass were owners of Atom Wheels, a company manufacturing inline and roller skates and a competitior of Riedell.

25. On information and belief, Julie and Doug Glass' decades of experience in the skating world, and in particular their many years' experience with roller skates and roller derby, have made Mota and its owners well aware of Riedell's reputation and pervasiveness within the market.

26. Riedell sells roller skate bearings bearing the Moto® Mark domestically and around the world, and the Riedell® brand is internationally famous in the world of professional and recreational ice and roller skating.

27. Riedell has expended significant time and money promoting and protecting the Moto® Mark.

28. As a result of this continuous and exclusive use of the Moto® Mark in connection with roller skates, Riedell owns valuable goodwill that is symbolized by the registered Moto® Mark.

29. The Moto® Mark features and incorporates a common-law trademark and distinctive trade dress, which indicate the source of the roller skate bearing, including its original design, stylistic elements, overall look and feel, and the word Moto.

30. Since at least September 14, 2011, Riedell has used the Moto® Mark in connection with sales of its roller skate bearings to the public, and the Moto® Mark has become an iconic image of Riedell®, as well as the sport of roller derby.

31. Well after Riedell's first use and federal registration of the Moto® Mark, in or about early September 2015, Riedell discovered that Mota had begun aggressively and prominently mass marketing, promoting, and offering for sale to customers in

the United States products bearing the Mota Marks, reflected on the attached **Exhibit C**, including roller skate bearings featuring the Mota Marks (the "Mota Bearings"), which are virtually identical to roller skate bearings featuring the Moto® Mark ("Moto Bearings").

32. The infringing Mota Bearings are the same size, shape, and look as the the Moto Bearings, the infringing Mota Bearings copy the all-capital letters of the Moto Bearings, and the infringing Mota Bearings further copy the distinctive "ceramic" and "Swiss" aspect of the Moto Bearings.

33. The only distiguishing feature between the Moto Bearings and the Mota Bearings is the use of the Moto® Mark on the former, and Mota's use of the confusingly similar Mota Mark, as depicted in paragraph 5 above, on the latter.

34. In addition to Mota's marketing, promotion, and offer of sale of the Mota Bearings, Mota is marketing, promoting, and offering for sale non-bearing skate products featuring the Mota Mark, including without limitation leather skate boots, chassis covers, wheels, lubricants, bearing shields, backpacks, and apparel.

35. The sale of these non-bearing skate products further confuses, diminishes, and tarnishes the value of the Moto® Mark given the close relationship between skate-related products in the niche quad skate and roller derby market.

36. Riedell has used the Moto® Mark extensively and continuously before Mota began using the Mota Marks, and Mota was well aware of the federally registered Moto® Mark based on the presence and participation of Mota's members, Julie and Doug Glass, in the skate and roller derby market for decades.

37. Mota's roller skates featuring the Mota Marks are very similar to and compete directly with roller skate bearings sold and offered by Riedell, and the parties' goods appear and are sold through overlapping, and at times side by side, channels of trade, marketing, distribution, and consumption, including throughout the United States and the entire world by way of the World Wide Web.

38. Mota's use of a nearly identical and confusingly similar mark to the Moto® Mark in connection with skate products, including without limitation bearings, is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Mota with Riedell, or as to the origin, sponsorship, or approval of Mota's goods, services, or commercial activities by Riedell. This is particularly damaging with respect to those people who perceive a defect or lack of quality in Mota's products.

39. The likelihood of confusion, mistake, and deception engendered by Mota's use of the Mota Marks in connection with roller skates is causing irreparable harm to the business and goodwill associated with the Moto® Mark.

40. Further, Mota's use of the Mota Marks is an attempt to counterfeit, infringe on, unfairly compete with, and unjustly profit from, the Moto® Mark.

41. Despite due demands, Mota has refused to cease the use, marketing, advertising, and distribution of the infringing Mota Marks, entitling Riedell for the relief demanded in this Complaint.

## COUNT I
## Trademark Infringement And Unfair Competition Under 15 U.S.C. § 1125

42. Riedell incorporates herein the allegations set forth above.

43. As alleged herein, Mota has offered for sale, marketed, and promoted the Mota Marks, which are likely to cause confusion, mistake, or deceive as to their affiliation with the Moto® Mark or as to affiliation, connection, or association with Riedell and the Moto® Mark, or as to the origin, sponsorship, or approval of the Mota Marks by Riedell.

44. As a direct and proximate result of Mota's infringement, Riedell has suffered and will continue to suffer irreparable harm for which no adequate remedy at law exists, and Riedell is entitled to preliminary and permanent injunctive relief and to recover all damages caused by Mota's infringement, including Mota's profits and Riedell's actual damages, attorney fees, and costs.

## COUNT II
## Common Law Trademark Infringement And Unfair Competition

45. Riedell incorporates herein the allegations set forth above.

46. Mota's use of a nearly identical and confusingly similar imitation of the Moto® Mark, in the form of the Mota Marks, constitutes common law trademark infringement and unfair competition, and it is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Mota with Riedell or as to the origin, sponsorship, or approval of Mota's goods, services or commercial activities by Riedell.

47. Unless enjoined by this Court, Mota's use of the Infringing Work will continue to cause a likelihood of confusion and deception among the public and cause injury to Riedell's goodwill and reputation as symbolized by the Moto® Mark, for which Riedell has no adequate remedy at law.

48. Mota's actions are an intentional, willful, and malicious intent to trade on the goodwill associated with the Moto® Mark to Riedell's great and irreparable injury.

49. Mota has caused and is likely to continue causing substantial injury to the public and to Riedell, and Riedell is entitled to preliminary and permanent injunctive relief as well as to recover Mota's profits, Riedell's actual damages, and Riedell's costs and reasonable attorney fees as permitted by law.

## COUNT III
### False Advertising in Violation of Federal Law

50. Riedell incorporates herein the allegations set forth above.

51. Mota has engaged in false advertising in violation of Section 43(a) of the Lanham Act by using, in connection with its goods, false or misleading descriptions and representations of fact in interstate commerce in commercial advertising or promotion. The Mota Marks and the representations contained therein deceive or have the capacity to deceive a substantial portion of potential consumers by their nearly exact copy of the Moto Bearings but at a cheaper price and at a lower quality. Such descriptions and representations are material in that they are likely to influence the consumer's purchasing decision and they misrepresent the nature,

qualities, and/or origin of Mota's goods, as well as impute poor quality to the Moto® Mark, and Riedell is, or is likely to be, damaged by Mota's acts.

52. Mota's acts were knowing, willful, malicious, deliberate, and/or fraudulent, making this an exceptional case within the meaning of 15 U.S.C. § 1117, and therefore Riedell is entitled to recover its attorneys' fees and costs.

## COUNT IV
## State Law Unfair and Deceptive Trade Practices

53. Riedell incorporates herein the allegations set forth above.

54. Mota has engaged in deceptive trade practices in violation of MINN. STAT. § 325D.44 due to its infringement of the trademark and trade dress embodied in the Moto® Mark, which causes the likelihood of confusion or of misunderstanding as to the source, sponsorship, or approval of the Mota Marks and causes the likelihood of confusion as to the affiliation, connection, or association with the Moto® Mark.

55. Mota has also engaged in unlawful trade practices in violation of MINN. STAT. § 325D.13 by engaging in conduct that misleads consumers as to the quality and origin of the merchandise offered for sale.

56. Mota's unauthorized use of the Mota Marks as alleged and described herein further constitutes unfair and deceptive acts or practices in the course of a business, trade, or commerce in violation of the unfair and deceptive trade practices statutes of several states, including, but not limited to, CAL. CIV. CODE § 1770; CAL. BUS. & PROF. CODE 17500 *et. seq.*; COLO. REV. STAT. § 6-1-101 *et*

*seq.*; 815 ILL. COMP. STAT. 510/1-7; DEL. CODE ANN.. tit. 6, §§ 2531 to 2536; GA. CODE ANN. §§ 10-1-370 to 10-1-375; HAWAII. REV. STAT §§ 481A-5; 815 ILL. COMP. STAT. 505/1-12; 765 ILL. COMP. STAT. 1040/1-9; ME. REV. STAT. ANN. Tit. 10, §§ 1211 to 1216; MASS. GEN. LAWS ch. 93A, § 2(a); NEB. REV. STAT. §§ 87-301 to 87-306; N.M. STAT. ANN.. 57-12-1 to 57-12-22; N.Y. GEN. BUS. LAW § 349; and OHIO REV. CODE § 4165.01-.04; and OKL. REV. STAT. ANN. Tit. 78, §§ 51 to 55.

57. Mota's unauthorized use of a confusingly similar imitation of the Moto® Mark has caused and is likely to continue to cause substantial injury to the public and to Riedell, and Riedell is entitled to preliminary and permanent injunctive relief, recovery of Mota's profits, and Riedell's actual damages, costs, and attorneys' fees, as well as punitive damages.

58. As a direct and proximate result of the likelihood of confusion created by Mota's conduct, Riedell has suffered and will continue to suffer irreparable harm if Mota's conduct is not enjoined.

59. Under Minn. Stat. §§ 325D.45 and 8.13, subd. 3a, due to Mota's knowing and willful infringement, Riedell is entitled to recover its attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Riedell asks the Court for the following relief:

1.    An order that Mota and all of its agents, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Mota, or in concert or participation with Mota, including without

limitation any defendants to be identified through discovery, and each of them, be enjoined preliminarily and permanently, from:

a.     using the Moto® Mark, or any other copy, reproduction, colorable imitation, or simulation of the Moto® Mark, including without limitation the Mota Marks, on or in connection with roller skates or roller skate accessories;

b.     using any trademark, service mark, name, logo, design, or source designation of any kind, including without limitation the Mota Marks, on or in connection with roller skates, which is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by Riedell, are sponsored or authorized by Riedell, or are in any way connected or related to Riedell;

c.     passing off, palming off, or assisting in passing off or palming off, Mota's goods or services, including without limitation the Mota Marks, as those of Riedell, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint; and

d.     attempting to register the Mota Marks, or any other copy, reproduction, colorable imitation, or simulation of the Moto® Mark in any state, federal, or foreign governmental agency that registers or recognizes trademarks;

2.    An order that Mota and all of its agents, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Mota, or in concert or participation with Mota, including without limitation any defendants to be identified through discovery, and each of them, be

ordered to abandon, withdraw, or cancel, as the case may be, any and all trademark applications or registrations anywhere in the world that consist of the Mota Marks in connection with roller skates;

3.      An order that Mota and all of its agents, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Mota, or in concert or participation with Mota, including without limitation any defendants to be identified through discovery, and each of them, be ordered to recall and impound all products bearing the Mota Marks or any other confusingly similar mark, which have been shipped by Mota or under its authority to any corporate or individual customer, including, but not limited to, any wholesaler, distributor, retailer, consignor, or marketer, and also to deliver to each customer a copy of any court order for injunctive relief that may be issued against Mota;

4.      An order that Mota and all of its agents, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Mota, or in concert or participation with Mota, including without limitation any defendants to be identified through discovery, and each of them, be compelled to account to Riedell for any and all profits derived by Mota from the manufacture, sale, licensing or distribution of the Mota Marks as described in this Complaint;

5.      A judgment in favor of Riedell and against Mota, and any defendants to be identified through discovery, and each of them, for all damages caused by the acts forming the basis of this Complaint, including Mota's profits and treble damages;

6.    A judgment that Mota, and any defendants to be identified through discovery, and each of them, be required to pay Riedell the costs of and the reasonable attorneys' fees, expert fees, witness fees, as well as all other taxable costs and disbursements, incurred by Riedell in this action as permitted by law;

7.    Findings that, based on Mota's willful and deliberate infringement and dilution of the Moto® Mark, and to deter such conduct in the future, Riedell be awarded punitive damages from Mota and any defendants, including John Doe, Mary Roe, ABC Corporation, XYZ, LLC, and any other persons or entities to be identified through discovery;

8.    An order that Mota, and any defendants to be identified through discovery, and each of them, be required to pay prejudgment and pre-verdict interest on all monetary awards; and

9.    Such other and further relief as the Court may deem just.

**PLAINTIFF DEMANDS A JURY ON ALL CLAIMS SO TRIABLE**

Dated: October 13, 2015            BEST & FLANAGAN LLP


                                   *s/ Edward P. Sheu*
                                   Edward Sheu (#312885)
                                   Elizabeth A. Dahlstrom (#393603)
                                   60 S. Sixth Street, Suite 2700
                                   Minneapolis, MN 55402
                                   Tel: (612) 339-7121
                                   Fax: (612) 339-5897
                                   esheu@bestlaw.com

                                   ATTORNEYS FOR PLAINTIFF

2229402